IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
SOUTHERN DIVISION
No. 7:15-CV-69-FL

JAMES BIGELOW,                          )
                                        )
          Plaintiff,                    )
                                        )
     v.                                 )        **MEMORANDUM &**
                                        )        **RECOMMENDATION**
CAROLYN W. COLVIN,                      )
Acting Commissioner of Social Security, )
                                        )
          Defendant.                    )

This matter is before the court on the parties' cross motions for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure. James Bigelow ("Plaintiff") filed this action pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3) seeking judicial review of the denial of his application for Supplemental Security Income (SSI). The time for filing responsive briefs has expired, and the pending motions are ripe for adjudication. Having carefully reviewed the administrative record and the motions and memoranda submitted by the parties, the undersigned recommends that Plaintiff's Motion for Judgment on the Pleadings [DE #24] be granted, Defendant's Motion for Judgment on the Pleadings [DE #26] be denied, and the matter be remanded to the Commissioner for further consideration.

## STATEMENT OF THE CASE

Plaintiff protectively filed an application for SSI on October 31, 2011 (Tr. 63, 77) alleging disability beginning May 15, 2008 (Tr. 138). The applications were denied initially and upon reconsideration, and a request for hearing was filed. (Tr. 51-62, 64-76, 90-92.) On November

12, 2013, a hearing was held before Administrative Law Judge Edward Bowling ("ALJ"), who issued an unfavorable ruling on November 25, 2013. (Tr. 22, 27.) On February 5, 2015, the Appeals Council denied Plaintiff's request for review. (Tr. 1.) Plaintiff now seeks judicial review of the final administrative decision pursuant to 42 U.S.C. § 405(g).

## DISCUSSION

### I. Standard of Review

The scope of judicial review of a final agency decision denying disability benefits is limited to determining whether substantial evidence supports the Commissioner's factual findings and whether the decision was reached through the application of the correct legal standards. *See Coffman v. Bowen*, 829 F.2d 514, 517 (4th Cir. 1987). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion; [i]t consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996) (quoting *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966)) (internal quotation marks and citation omitted) (alteration in original). "In reviewing for substantial evidence, [the court should not] undertake to re-weigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the [Commissioner]." *Mastro v. Apfel*, 270 F.3d 171, 176 (4th Cir. 2001) (quoting *Craig*, 76 F.3d at 589) (internal quotation marks omitted) (first and second alterations in original). Rather, in conducting the "substantial evidence" inquiry, the court determines whether the Commissioner has considered all relevant evidence and sufficiently explained the weight accorded to the evidence. *Sterling Smokeless Coal Co. v. Akers*, 131 F.3d 438, 439–40 (4th Cir. 1997).

## II.     Disability Determination

In making a disability determination, the Commissioner utilizes a five-step evaluation process.   The Commissioner asks, sequentially, whether the claimant: (1) is engaged in substantial gainful activity; (2) has a severe impairment; (3) has an impairment that meets or equals the requirements of an impairment listed in 20 C.F.R. Part 404, Subpart P, App. 1; (4) can perform the requirements of past work; and, if not, (5) based on the claimant's age, work experience, and residual functional capacity can adjust to other work that exists in significant numbers in the national economy.   *See* 20 C.F.R. § 404.1520; *Albright v. Comm'r of Soc. Sec. Admin.*, 174 F.3d 473, 475 n.2 (4th Cir. 1999).   The burden of proof and production during the first four steps of the inquiry rests on the claimant.   *Pass v. Chater*, 65 F.3d 1200, 1203 (4th Cir. 1995).   At the fifth step, the burden shifts to the Commissioner to show that other work exists in the national economy that the claimant can perform.   *Id*.

## III.     ALJ's Findings

Applying the five-step, sequential evaluation process, the ALJ found Plaintiff "not disabled" as defined in the Social Security Act.   At step one, the ALJ found Plaintiff had not engaged in substantial gainful employment since October 31, 2011.   (Tr. 11.)   Next, the ALJ determined Plaintiff had the following severe impairments: "Borderline Intellectual Functioning (BIF); bilateral knee degenerative joint disease; hypertension; and diabetes mellitus (controlled by diet)."   (*Id.*)   However, at step three, the ALJ concluded Plaintiff's impairments were not severe enough, either individually or in combination, to meet or medically equal one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1.   (Tr. 12-14.)

Prior to proceeding to step four, the ALJ assessed Plaintiff's residual functional capacity ("RFC") and found as follow:

3

> [Claimant can] perform light work . . . except he requires a sit/stand option of 30 to 45 minutes. He can occasionally climb ramps and stairs but never climb ladders, ropes, and scaffolds. The claimant can frequently balance, occasionally kneel and crouch but never crawl. He must avoid concentrated exposure to hazards. The claimant is further limited to simple routine repetitive tasks in that he can apply common sense understanding to carry out oral, written, and diagrammatic instructions. He is limited to low stress jobs that require neither many changes in the work place nor assembly line type of work.

(Tr. 14.) In making this assessment, the ALJ found Plaintiff's statements about the severity of his symptoms not fully credible. (Tr. 15.) At step four, the ALJ concluded Plaintiff did not have the RFC to perform the requirements of his past relevant work. (Tr. 20.) Nonetheless, at step five, upon considering Plaintiff's age, education, work experience and RFC, the ALJ determined Plaintiff is capable of adjusting to the demands of other employment opportunities that exist in significant numbers in the state and national economies. (Tr. 20-21.)

## IV.     Plaintiff's Contentions

Plaintiff challenges the Commissioner's final decision denying benefits on two grounds. Plaintiff first contends the ALJ incorrectly evaluated Listing 1.02A. Second, Plaintiff asserts the ALJ failed to perform a function-by-function analysis regarding Plaintiff's ability to walk.

### A.     Listing 1.02A

In determining whether a listing is met or equaled, an ALJ must consider all evidence in the case record about the claimant's impairments and their effects on the claimant. 20 C.F.R. § 404.1526(c). Where a claimant has a severe impairment and the record contains evidence that symptoms related to the impairment "correspond to some or all of the requirements of a listing," it is incumbent upon the ALJ to identify the listing and to compare the claimant's symptoms to each of the listing's requirements. *See Cook v. Heckler*, 783 F.2d 1168, 1173 (4th Cir.1986). While it may not always be necessary for the ALJ to perform a "step-by-step" analysis of the listing's criteria, the ALJ must evaluate the claimant's symptoms in light of the specified medical

4

criteria and explain his rationale. *Williams v. Astrue*, No. 5:11–CV–409–D, 2012 WL 4321390 (E.D.N.C. Sept. 20, 2012). An ALJ's failure to compare a claimant's symptoms to the relevant listings or to explain, other than in a summary or conclusory fashion, why the claimant's impairments do not meet or equal a listing "makes it impossible for a reviewing court to evaluate whether substantial evidence supports the ALJ's findings." *Radford v. Colvin*, 734 F.3d 288, 295 (4th Cir. 2013); *see also Cook*, 783 F.2d at 1173.

Listing 1.02A is met when a claimant has

[m]ajor dysfunction of a joint(s) (due to any cause) . . . [c]haracterized by gross anatomical deformity (e.g., subluxation, contracture, bony or fibrous ankylosis, instability) and chronic joint pain and stiffness with signs of limitation of motion or other abnormal motion of the affected joint(s), and findings on appropriate medically acceptable imaging of joint space narrowing, bony destruction, or ankylosis of the affected joints.  With . . . [i]nvolvement of one major peripheral weight bearing joint (i.e., hip, knee, or ankle), resulting in inability to ambulate effectively.

20 C.F.R. Part 404, Subpt. P, App. 1, § 1.02A.   The inability to ambulate effectively means

an extreme limitation of the ability to walk, i.e., an impairment that interferes very seriously with the individual's ability to independently initiate, sustain, or complete activities.   Ineffective ambulation is defined generally as having insufficient lower extremity functioning . . . to permit independent ambulation without the use of a hand-held assistive device(s) that limits the functioning of both upper extremities.

20 C.F.R. Part 404, Subpt. P, App. 1, § 1.00(B)(2)(b)(1).

To ambulate effectively, individuals must be capable of sustaining a reasonable walking pace over a sufficient distance to be able to carry out activities of daily living.   They must have the ability to travel without companion assistance to and from a place of employment or school.   Therefore, examples of ineffective ambulation include, but are not limited to, the inability to walk without the use of a walker, two crutches or two canes, the inability to walk a block at a reasonable pace on rough or uneven surfaces, the inability to use standard public transportation, the inability to carry out routine ambulatory activities, such as shopping and banking, and the ability to climb a few steps at a reasonable pace with the use of a single handrail.   The ability to walk independently about one's home without the use of assistive devices does not, in and of itself, constitute effective ambulation.

20 C.F.R. Part 404, Subpt. P, App. 1, § 1.00(B)(2)(b)(2).

Here, the ALJ addressed whether Plaintiff met Listing 1.02A stating, "Notably, no acceptable medical source has opined or mentioned findings equivalent in severity to the criteria of any listed impairment including the listings governed by 1.00 Musculoskeletal System and specifically 1.02 Major dysfunction of a joint(s) . . . . Listing 1.02 is not met because the claimant is able to ambulate effectively. He testified that he could walk 20 to 30 feet and take care of his personal needs." (Tr. 12.) The ALJ goes on to provide a thorough discussion of Plaintiff's medical record. However, he fails to explain the inconsistencies between the evidence contained in the medical record and his determination that there are no medical findings equivalent in severity to the listing and that Plaintiff is able to ambulate effectively.

In December 2010, while Plaintiff was serving a term of imprisonment in the North Carolina Department of Corrections, radiology reports regarding Plaintiff's left and right knees state, "The knee joint is in alignment, but there is narrowing of the joint space due to marked degenerative changes. There is marked degenerative spurring involving tibial spinal and femoral condyles. No fracture or dislocation is seen. No joint effusion is seen." (Tr. 299.) The report further concludes that there is "[m]arked osteoarthritis" of the left and right knees. (Tr. 299.)

The ALJ gave significant weight to the April 5, 2012, assessment of non-examining state agency consultant, Dr. Ellen Huffman-Zechman, , that Plaintiff was capable of performing light work with postural and environmental limitations. However, the ALJ further determined that due to the severity of Plaintiff's degenerative joint disease, a sit/stand option was required. (Tr. 19.)

Almost a year after Dr. Huffman-Zechman's assessment, Plaintiff presented to the emergency room on March 7, 2013, with swelling in both knees that he reported had occurred for one to two months. (Tr. 328.) Edema, moderate bruising, and point tenderness were noted. (Tr.

328.)  Plaintiff was prescribed crutches, but when he attempted to stand, he was not able to apply weight to his legs.  (Tr. 332.)  A radiology report for the right knee stated, "Moderate joint effusion is seen.  Degenerative changes seen in all 3 compartments.  No fracture, dislocation or foreign body appreciated."  (Tr. 344.)  The left knee radiology report stated, "Moderate joint effusion is seen.  Degenerative changes in the patellofemoral compartment.  No fracture, dislocation or foreign body seen.  The bones are osteopenic.  There [sic] athermotous changes the arterial system."  (Tr. 345.)

On March 20, 2013, Plaintiff presented to Dr. Kenneth McElynn with bilateral knee pain and requested an evaluation for steroid shots in his knees, which he received.  (Tr. 482, 485.) Regarding the examination of Plaintiff's knees, Dr. McElynn stated, "very unstable ambulation due to severe arthritic change in both knees; misshapen joint lines are present bilaterally due to arthritic change; trace midline effusions are noted bilaterally . . . ."  (Tr. 485.)

Plaintiff presented to Dr. McElynn for a follow-up appointment regarding his knees on May 29, 2013.  (Tr. 378.)  Dr. McElynn noted that Plaintiff had, "very tender medial joint line bilaterally; decreased range of motion to 75 degrees of flexion; [Plaintiff] walks with antalgic gait." (Tr. 480.)  Dr. McElynn further noted that Plaintiff was seeking a charity care application to consider a total knee replacement and that he had "very poor ambulatory status."  (Tr. 480.)

On July 3, 2013, Dr. McElynn noted that Plaintiff requested a prescription for a walker (Tr. 474), which Plaintiff testified Dr. McElynn prescribed (Tr. 37).  Upon examination, Plaintiff had "severe tenderness to medial knee jointlines bilaterally; [range of motion] testing limited by stiffness."  (Tr. 476.)  Dr. McElynn further stated that Plaintiff had "severe [osteoarthritis] of both knees," he was "seek[ing] charity for orthopedic evaluation and possible [total knee replacement]," and that he "has severe knee arthritis so would be unable to complete treadmill

stress testing" for his hypertension.   (Tr. 476-77.)

On October 14, 2013, Plaintiff presented to Dr. Dax Varkey of the University of North Carolina Hospitals for an evaluation of his bilateral knee pain pursuant to Dr. Elynn's consultation request.   (Tr. 506.)   Plaintiff reported that he required "a walker for almost all motion" (Tr. 506), and Dr. Varkey stated, "Examination of the left lower extremity shows range of motion at the knee from 10-100 degrees, lateral-sided joint line tenderness.   Examination of the right lower extremity shows range of motion 15-90 degrees with medial greater than lateral joint tenderness.   Both knees are stable ligamentously.   Positive patellar grind test bilaterally."   (Tr. 507.)   X-rays of both knees "show[ed] significant joint space narrowing with bone-on-bone articulation and osteophytosis."   (Tr. 507.)   Plaintiff was assessed with "severe bilateral osteoarthritis concerning for possible inflammatory arthropathy."   (Tr. 507.)

While the ALJ's review of the medical record includes much of that discussed directly above, the determination is devoid of any explanation as to how the medical evidence does not demonstrate the severity required under 1.02A, or how the ALJ concluded Plaintiff is able to ambulate effectively.   During the time period from March 7, 2013, to the most recent medical records, there is no medical evidence that Plaintiff's knees have improved, that he no longer requires a walker, or that his pain has decreased or is under control.   The record demonstrates that gross anatomical deformity from Plaintiff's unstable ambulation, the inability to stand to use crutches, and his use of a walker was present.   On March 20, 213, Dr. McElynn also noted that misshapen jointlines were present in both knees because of arthritic changes.   (Tr. 485.)   The record also demonstrates that Plaintiff experienced joint pain and stiffness with signs of limitation of motion.   Since March 2013, Plaintiff has complained of bilateral knee pain, the range of motion of his knees has been limited (Tr. 476, 480, 507), and it was noted that this limitation was due to

8

stiffness (Tr. 476). Moreover, there were findings on appropriate medically acceptable imaging of joint space narrowing. On October 14, 2013, x-rays of both knees "show[ed] significant joint space narrowing with bone-on-bone articulation and osteophytosis." (Tr. 507.)

The ALJ further failed to explain his reasoning that Plaintiff could ambulate effectively. The listings provide that examples of ineffective ambulation include, but are not limited to, the inability to walk without the use of a walker and the inability to walk a block at a reasonable pace on rough or uneven surfaces. Here the ALJ determined without explanation that, although Plaintiff was prescribed a walker, the fact that Plaintiff could "walk 20 to 30 feet and take care of his personal needs" established Plaintiff's ability to ambulate effectively. Without an explanation as to how the ALJ reached this conclusion given the contradictory evidence in the record, the undersigned is unable to determine if the ALJ's determination is supported by substantial evidence, and the case should be remanded for further consideration.

**B.      Function-By-Function Analysis**

Plaintiff also asserts that the ALJ failed to perform a function-by-function analysis regarding Plaintiff's ability to walk. (Pl.'s Mem. at 8-11.) Because this case is being remanded for further consideration of Listing 1.02A, there exists a substantial possibility that the Commissioner's findings may be different on remand. Accordingly, the undersigned expresses no opinion as to Plaintiff's remaining assignment of error.

## CONCLUSION

For the reasons stated above, it is RECOMMENDED that Plaintiff's Motion for Judgment on the Pleadings [DE #24] be GRANTED, Defendant's Motion for Judgment on the Pleadings [DE #26] be DENIED, and the case be REMANDED to the Commissioner for further consideration.

9

IT IS DIRECTED that a copy of this Memorandum and Recommendation be served on each of the parties or, if represented, their counsel. Each party shall have until **June 20, 2016**, to file written objections to the Memorandum and Recommendation. The presiding district judge must conduct his or her own review (that is, make a de novo determination) of those portions of the Memorandum and Recommendation to which objection is properly made and may accept, reject, or modify the determinations in the Memorandum and Recommendation; receive further evidence; or return the matter to the magistrate judge with instructions. *See, e.g.,* 28 U.S.C. § 636(b)(l); Fed. R. Civ. P. 72(b)(3); Local Civ. R. 1.1 (permitting modification of deadlines specified in local rules), 72.4(b), E.D.N.C.

A party that does not file written objections to the Memorandum and Recommendation by the foregoing deadline, will be giving up the right to review of the Memorandum and Recommendation by the presiding district judge as described above, and the presiding district judge may enter an order or judgment based on the Memorandum and Recommendation without such review. In addition, a party's failure to file written objections by the foregoing deadline may bar the party from appealing to the Court of Appeals from an order or judgment of the presiding district judge based on the Memorandum and Recommendation. *See Wright v. Collins*, 766 F.2d 841, 846-47 (4th Cir. 1985).

This 1st day of June 2016.

KIMBERLY A. SWANK
United States Magistrate Judge